IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ILYAS JABBAR QAWISHABAZZ,  )  )  Plaintiff,  )  v.  )  )  DONAL CAMPBELL, et. al.,  )  )  Defendants.  ) | CASE NO. 2:02-cv-264-F  (WO – not intended for publication) |

# MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

Plaintiff Ilyas Jabbar Qawishabazz, a state prisoner, contends that his First Amendment rights were violated by employees of the Department of Corrections. The two issues before this Court are: (1) whether the Defendants' refusal to allow the Plaintiff to wear his kufi cap outside of religious services violated his First Amendment rights; and (2) whether the Defendants' refusal to allow him to have free-world sponsors bring in outside food to celebrate the Feast of Sacrifice violated his First Amendment rights. After weighing the evidence and testimony offered by the parties during a bench trial, the Court finds that judgment is due to be entered in favor of the Defendants and against the Plaintiff as to the first issue, the wearing of a kufi cap outside of religious services. The Court further finds that the second issue, regarding bringing in outside food for the Feast of Sacrifice, is now moot, as the Department of Corrections has recently changed its

1

written policies to allow this to be done.

## II. JURISDICTION

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Venue is appropriate pursuant to 28 U.S.C. § 1391.

## III. FACTS

### A. *Kufi Cap*

In support of this judgment, the Court makes the following findings of fact. The parties stipulated at the pretrial conference that the Department of Corrections does not permit the wearing of a kufi cap except during religious services. Department of Corrections Administrative Regulation Number 333 describes the religious articles permitted in its institutions. Section VI, "Approved Religious Practices and Activities," specifically describes religious items and symbols that may be kept by inmates and used in religious services. According to Section VI.2, religious caps, including kufis, "may be allowed during religious services only. . . ." The parties also stipulated at the beginning of the trial that prisoners in Alabama correctional facilities may have been allowed to wear kufi caps at one time; before the DOC regulations specifically addressed the wearing of kufi caps, such policies would have been implemented on an institution-by-institution basis.

The evidence presented at trial established that inmates housed at Department of Corrections facilities may wear pre-approved hats or caps at certain times. Inmates may wear baseball caps during sporting events. Inmates who are assigned to do farm work

may wear prison-issued hats for the purpose of sun protection. In addition, all inmates may wear knit toboggan-style caps for warmth when the weather is cold. All of these hats are either prison-issued or pre-approved by the Department of Corrections, and all are white. No other type of headgear may be worn by inmates, except during religious services.

The credible evidence before this Court established that, for security reasons, it is necessary to prevent potential group affiliations in the prison setting. Preventing group affiliations helps to promote the security of both staff and inmates in prison facilities. In the interest of preventing group or gang affiliations, prison regulations prohibit any potential individualization or personalization of clothing or appearance by inmates. For this reason, no colors or other distinguishing marks are allowed on inmates' clothing, and prisoners are not allowed to display religious symbols except during religious services. Any religious symbol worn outside of religious services, such as a cross, medallion or medicine bag, must be fully hidden by the prisoners' clothing

The wearing of a kufi cap outside of a religious service would be a form of personalizing one's appearance and making visible a group affiliation.

### B. *Feast of Sacrifice*

The credible evidence before this Court established that the Department of Corrections has amended its regulation regarding whether prisoners are allowed to have outside food brought in for the Feast of Sacrifice. Department of Corrections

Administrative Regulation Number 333 now lists the Feast of Sacrifice as a religious event for which inmates may have outside food brought into the institution by free-world sponsors. The Plaintiff acknowledges that this amendment resolves his complaint regarding the Feast of Sacrifice and that this claim is now moot.

## IV. CONCLUSIONS OF LAW

### A. *Kufi Cap*

In support of this judgment, the Court makes the following conclusions of law. A prison regulation that impinges on inmates constitutional rights is "valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). *See also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987). "[S]uch a standard is necessary if 'prison administrators. . . , and not the courts [are] to make the difficult judgments concerning institutional operations.'" *Turner*, 482 U.S. at 89 (quoting *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 128 (1977)). Several factors are relevant in determining whether a prison regulation infringes on a prisoner's constitutional rights: (1) Is there a valid, rational correlation between the prison regulation and the legitimate governmental interest advanced? (2) Are there alternative means of exercising the rights that remain available to the prisoner? (3) What is the impact of an accommodation in favor of the inmate on prison staff, other prisoners, and the allocation of prison resources generally? (4) Do alternatives exist that would accommodate the prisoner's rights at little cost to valid prison interests? *Turner*, 482 U.S. at 89-91. Other courts have found that

there is a legitimate penological interest in promoting prison security by restricting the use of religious symbols, such as the kufi cap. *See Sutton v. Stewart*, 185 F.3d 869 (9th Cir. 1999) (holding that a prison regulation against wearing a kufi at all times was reasonably related to the legitimate penological interest of prison security); *Muhammad v. Lynaugh*, 966 F.2d 901, 902 (5th Cir. 1992) (holding that regulations restricting the use of kufi caps were reasonably related to prison security, a legitimate penological interest).

The Defendants established at trial that prohibiting the wearing of kufi caps except at religious services is reasonably related to the legitimate penological goals of maintaining the safety and security of inmates and prisons staff. First, the prohibition helps to limit the ability of inmates to form gangs and group affiliations by restricting the degree to which inmates may personalize their appearance. Second, the prohibition prevents inmates of different religions from being offended by outward displays of religion. As the Defendants explained, any upset in the balance of equilibrium in an already-tense prison environment presents a serious threat to the health and safety of both inmates and correctional officers.[1] Third, the prohibition prevents the appearance that the Department of Corrections favors any one religion over another, thus avoiding any potential resentment among inmates who might feel that their religion is somehow

---

[1] The testimony of Warden Thomas at trial indicated that Department of Corrections facilities are currently populated well over their intended capacity, and that this overcrowding increases the likelihood that gang formation and potentially divisive religious affiliation could quickly escalate into violence.

disfavored.[2]

While the Defendants did not present convincing evidence that kufi caps themselves present a security risk – that is, that the wearing of kufi caps would make it easier or more likely that inmates might conceal contraband or weapons – the Court finds that sufficient evidence regarding group affiliations was presented to meet the requirement of a legitimate penological interest. In addition, the Plaintiff does have alternative means of exercising his First Amendment right to free exercise of religion. He may participate in regular religious services, during which he may wear his kufi cap. He may also participate in two annual religious celebrations or feasts, during which food from the outside world may be brought into the prison.

Because the Defendants have demonstrated that the Department of Corrections regulation is reasonably related to the legitimate penological interest of security, the Court finds that the Plaintiff has not shown that his First Amendment rights have been violated through the Department of Corrections regulation prohibiting him from wearing his kufi cap outside of religious services.

## B. *Feast of Sacrifice*

---

[2] The Court notes that if kufi caps were permitted to be worn outside of religious services, additional lawsuits would undoubtedly ensue regarding other outward religious symbols. This scenario would put the Court in the position of being the arbiter of minute details in the prison's dress code, including the color, fit, length, etc. of headgear or other religious symbols that prisoners may seek to wear. The Plaintiff argued that this should not be a factor, as it is the role of the Court to resolve grievances. While the Court does not dispute this characterization, it is not the role of the Court to establish every detail of prison regulations with regard to personal appearance and use of religious symbols.

The Court finds that, because the Department of Corrections regulation has been changed to allow outside food to be brought in for the Feast of Sacrifice, the Plaintiff's claim regarding this celebration is now moot. The Plaintiff has stipulated that he no longer has a complaint regarding the Feast of Sacrifice.

The Plaintiff's claim regarding the Feast of Sacrifice is therefore due to be dismissed.

## V. CONCLUSION

On the Plaintiff's first claim regarding the prohibition on wearing kufi caps outside of religious services, the Court finds that judgment is due to be entered in favor of the Defendants.

It is hereby ORDERED that the Plaintiff's second claim regarding bringing outside food in for the Feast of Sacrifice is DISMISSED as MOOT.

The Court will issue a Final Judgment consistent with this Memorandum Opinion and Order.

DONE this the 4th day of November, 2005.

        /s/ Mark E. Fuller
        CHIEF UNITED STATES DISTRICT JUDGE